1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17

RONN GEITHEIM,                          )        NO. CV 08-4089 AGR
                                        )
              Petitioner,               )
                                        )
       v.                               )
                                        )        MEMORANDUM OPINION AND
CAPTAIN BROWN,                          )        ORDER
                                        )
              Respondent.               )
                                        )
_____)

18       On June 20, 2008, Petitioner filed a Petition for Writ of Habeas Corpus By

19  a Person in Federal Custody ("Petition") pursuant to 28 U.S.C. § 2241.  On July

20  29, 2008, pursuant to 28 U.S.C. § 636(c), the parties jointly consented to proceed

21  before Magistrate Judge Rosenberg.  (Dkt. No. 6.)  On August 22, 2008,

22  Respondent filed an answer.  On August 29, 2008, Petitioner filed a reply.  On

23  December 11, 2008, Respondent filed a surreply brief pursuant to court order.

24  (Dkt. No. 13.)

25       The Court has taken the matter under submission without oral argument.

26                                      **I.**

27                                  **BACKGROUND**

28       The Petition contains one ground for relief.  Petitioner contends that the

Bureau of Prisons ("BOP") unlawfully incarcerated him at the San Bernardino County Jail ("SBCJ") for a violation of the terms of his supervised release. (Petition at 3 & Attached Facts ("Facts").)

On June 16, 2003, Petitioner was sentenced to 87 months (7 years, 3 months) in prison plus 5 years of supervised release for conspiracy to possess methamphetamine with intent to distribute it. (Petition at 2; Answer at 2; *United States v. Aiello*, Case No. 02-CR-255-CG (S.D. Ala. 2003), Minute Entry dated 6/16/03.)

Petitioner claims that on December 17, 2007, the BOP released him to the Probation Department to begin five years of supervised release, including six months of home confinement. (Facts (citing to 18 U.S.C. §§ 3624(c) and (e)[1]).) On the other hand, Respondent contends that Petitioner was not released from BOP custody.

On March 17, 2008, Petitioner tested positive for drugs. (Facts.) Petitioner states that the U.S. Marshal transported Petitioner to SBCJ. (*Id.*)

Petitioner claims that the BOP's action was unlawful because he was on supervised release and only the Probation Department had jurisdiction over him. (*Id.*) Therefore, he asks this Court to release him from SBCJ. (*Id.*)

///

///

---

[1] Section 3624(c) is entitled "Prerelease custody." Section 3624(c)(2) provides: "The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months."

Section 3624(e) provides in part: "A prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the Bureau of Prisons to the supervision of a probation officer who shall, during the term imposed, supervise the person released to the degree warranted by the conditions specified by the sentencing court. The term of supervised release commences on the day the person is released from imprisonment and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release."

1

2

## II.

## DISCUSSION

A prisoner in the custody of the United States is entitled to a writ of habeas corpus if "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

"A person who has been sentenced to a term of imprisonment . . . shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed, or until earlier released for satisfactory behavior pursuant to the provisions of section 3624."  18 U.S.C. § 3621(a).

Petitioner contends that he commenced supervised release on December 17, 2007 and remained on supervised release on March 17, 2008, the date of the positive drug test.  (Facts.)  Petitioner is incorrect.

**A.**     **Petitioner's History in the Residential Drug Abuse Treatment Program ("RDAP")**

The BOP is directed to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse."  18 U.S.C. § 3621(b).  Federal regulations describe the RDAP.  The RDAP lasts a minimum of 500 hours over a six to twelve-month period.  28 C.F.R. § 550.56.  Generally, an inmate participating in the RDAP "must be within thirty-six months of release."  *Id.* § 550.56(a)(4).  The inmate participates in the RDAP "in a treatment unit set apart from the general prison population."  *Id.* § 550.56.  Inmates are "required to complete subsequent transitional services programming in a community-based program and/or in a Bureau institution."  *Id.*  An inmate may be removed from the program for use or possession of alcohol or drugs, or for other conduct.[2]  *Id.* § 550.56(d)(2)(i).  An

---

   [2]  The BOP has authority to monitor prisoners in a community setting before early release.  *See McLean v. Crabtree*, 173 F.3d 1176, 1183 (9th Cir. 1999), *cert. denied*, 528 U.S. 1086 (2000).

3

1   inmate who successfully completes the treatment program may be eligible for

2   early release by a period not to exceed 12 months.  18 U.S.C. § 3621(e)(2)(B); 28

3   C.F.R. § 550.58.

4       Petitioner began the "institutional component" of the RDAP on February 5,

5   2007.  (Mayhew Decl. ¶ 5.)[3]

6       On August 15, 2007, Petitioner signed a Community Based Program

7   Agreement in which he promised, among other things, that if he was in home

8   confinement or at a Community Corrections Office ("CCC"), he would "legally

9   remain in the custody of the Bureau of Prisons and/or the U.S. Attorney General."

10  (Ex. C at 1,[4] Part II.)  On November 2, 2007, Petitioner completed the institutional

11  component of the RDAP and began the "transitional community component."

12  (Mayhew Decl. ¶ 8; Ex. B.)

13      Petitioner's pre-release preparation date was December 13, 2007.  (*Id.* ¶

14  10.)  This date is "the earliest date an inmate may be transferred to a CCC or

15  residential re-entry center."  (*Id.*)  That date was based on Petitioner's earliest

16  possible release date of June 13, 2008 at the time.  The June 13, 2008 date

17  assumed successful completion of the treatment plan and early release under 18

18  U.S.C. § 3621(e).  (*Id.*; Ex. D.)

19      On December 17, 2007, Petitioner was transferred to the CCC in Long

20  Beach, California (CLB)[5], which placed Petitioner at the Vinewood Community

21  Corrections Center ("Vinewood") in Los Angeles.  (*Id.* ¶ 11); 28 C.F.R. § 550.56;

22  *McLean*, 173 F.3d at 1182.  Petitioner signed a form indicating he was not

23  ///

24  _____

25      [3]  Wesley Mayhew is the Community Corrections Manager at the CLB.
    (Mayhew Decl. ¶ 1.)

26      [4]  Unless otherwise specified, all cited exhibits are attached to Mayhew's
    declaration.

27

28      [5]  The CLB "is responsible for the BOP inmates in the central and southern
    judicial districts of California."  (Mayhew Decl. ¶ 1.)

1  allowed to take alcohol or illegal drugs while at Vinewood and would be subject to

2  testing which, if positive, would result in discipline.  (Ex. F at 11.)

3       On March 4, 2008, Petitioner began home confinement under Vinewood's

4  supervision.  (Mayhew Decl. ¶ 12.)  On March 17, 2008, Petitioner submitted a

5  urine sample that tested positive for methamphetamines and amphetamines.  (*Id.*

6  ¶¶ 13-14.)  As a result of the positive test, Petitioner was removed from home

7  confinement, taken into custody, and transferred to the SBCJ.  (*Id.* ¶ 14.)  On

8  April 17, 2008, Petitioner had a BOP disciplinary hearing on the drug charge; he

9  denied the charge but was found to have used drugs.  (*Id.* ¶ 15.)  Based on the

10  decision, Petitioner's projected release date was changed from June 13, 2008, to

11  July 19, 2009.  (*Id.* ¶¶ 16-18.)

12       **B.    Analysis**

13       As of March 17, 2008, Petitioner was still in the transitional services

14  programming component of RDAP.  Petitioner's term of imprisonment had not

15  expired, and Petitioner was not yet eligible for early release.  Therefore, Petitioner

16  remained in the custody of the BOP.  18 U.S.C. § 3621(a).  Petitioner's argument

17  that the prison records are "not related to Petitioner's claim" (Reply at 4) is

18  rejected.

19       Petitioner has presented no credible evidence that his prison term had

20  expired or that he was granted early release under 18 U.S.C. § 3621(a).

21  Petitioner argues that, by statute, "[t]he term of supervised release commences

22  on the day the person is released from imprisonment."  18 U.S.C. § 3624(e).

23  (Reply at 6.)  However, the Supreme Court has interpreted § 3624(e) to mean

24  that "[s]upervised release does not run while an individual remains in the custody

25  of the Bureau of Prisons."  *United States v. Johnson*, 529 U.S. 53, 57, 120 S. Ct.

26  1114, 146 L. Ed. 2d 39 (2000).

27       The recent Ninth Circuit decision in *United States v. Miller*, Case No. 07-

28  30481, 2008 U.S. App. LEXIS 23404 (9th Cir. Nov. 7, 2008), confirms that

1   Petitioner was in BOP custody.  In the Ninth Circuit's decision, Miller was
2   transferred to the Bannock County Jail Work Release Program pursuant to 18
3   U.S.C. § 3624(c), "which requires the Bureau of Prisons to provide for a pre-
4   release program where practicable during the last six months of a person's
5   incarceration." *Id.* at *3.  Miller later injured his hand and was placed under
6   house arrest because he couldn't continue working in the program.  *Id.* at *4.
7   Subsequently, Miller was stopped for a traffic violation and drugs were found in
8   his car.  *Id.* at *5.  Miller was sentenced to an additional month of imprisonment
9   and 35 months of supervised release for violation of his supervised release.  *Id.*
10  at *5-6.  Then, in a later incident, Miller tested positive for methamphetamine use,
11  and the government again alleged that Miller violated his supervised release
12  terms.  *Id.* at *6.  Miller moved to dismiss the government's petition for lack of
13  jurisdiction contending that his supervised release began when he was
14  transferred to Bannock County Jail and ended *before* he tested positive for
15  methamphetamine use.  *Id.* at *6-7.

16      The Ninth Circuit held that 18 U.S.C. § 3624 "gives the BOP considerable
17  discretion in assigning a person to a particular facility – whether or not that facility
18  is maintained by the federal government – for purposes of serving a term of
19  imprisonment.  Regardless of where the BOP elects to transfer a person, she or
20  he remains under BOP custody until the prescribed term of 'imprisonment'
21  expires." *Id.* at *9.  The court also held that sections 3621(b) and 3624(c) give
22  the BOP explicit authority to "designate the place of prisoner's imprisonment . . .
23  and spend[] a reasonable part . . . of the [term of imprisonment] to be served [in]
24  conditions that . . . prepare for the prisoner's reentry into the community." *Id.* at
25  *10 (citations and internal quotation marks omitted).  Miller was in BOP custody
26  when he was transferred to Bannock County Jail and had *not* begun his
27  supervised release.  *Id.* at *16.
28  ///

1    Similarly, Petitioner was placed at Vinewood and later home confinement

2  during his prison term due to his participation in a voluntary treatment program in

3  which completion of the community requirement was necessary to be eligible for

4  early release.[6]  28 C.F.R. § 550.56.  Prison records show that Petitioner was

5  "referred to the Transitional Services Program for participation in community-

6  based drug treatment."  (Ex. E.)  The type of referral was stated as "RDAP - 3621

7  E BOP Substance Abuse Treatment Release".  (*Id.*)

8    The BOP has the authority to administer and design multiple treatment

9  programs, to require completion of the community requirement in order to be

10  eligible for early release, and to monitor prisoners in a community setting before

11  early release.  *McLean*, 173 F.3d at 1182-83.  "The period a prisoner convicted of

12  a nonviolent offense remains in custody after successfully completing a treatment

13  program may be reduced by the Bureau of Prisons, but such reduction may not

14  be more than one year from the term the prisoner must otherwise serve."  18

15  U.S.C. §3621(e)(2)(B); *Jacks v. Crabtree*, 114 F.3d 983, 984 (9th Cir. 1997)

16  (BOP has "broad discretion" to grant or deny sentence reduction under 18 U.S.C.

17  § 3621(e)(2)(B)), *cert. denied*, 523 U.S. 1009 (1998).  Petitioner's argument that

18  mere placement in the community component of the treatment program is the

19  equivalent of early release would nullify the community requirement and the

20  BOP's discretion to decide whether to grant early release.

21    Petitioner also argues that the language of 18 U.S.C. § 3624(c)(3) states,

22  in pertinent part, that:  "The United States Probation System shall, to the extent

23  practicable, offer assistance to a prisoner during prerelease custody under this

24  subsection."  Even assuming this statute were applicable, Petitioner cites no

25

26    _____

27    [6]  Petitioner asks rhetorically why BOP placed him at Vinewood and
provided him with clothing, etc., if he was not being placed on supervised release.
(Reply at 5-6.)  The answer, according to prison records, is that Petitioner
28  voluntarily participated in a substance abuse treatment program that contained a
community requirement.

1   authority for the proposition that such assistance would transfer custody from the
2   BOP to the Probation Department.  (Reply at 5.)  The plain language of the statue
3   does not confer custody on the Probation Department; it requires only that
4   Probation assist during prerelease custody "to the extent practicable."  (*See also*
5   Mayhew Decl. ¶ 19 ("Our office does work closely with the United States
6   Probation Office in an effort to assist inmates with successfully making the
7   transition from institutional confinement to halfway house placement to
8   supervised release.").)

9       Petitioner argues that the BOP Center Discipline Committee Report, which
10  was attached as Exhibit F to Mayhew's declaration, is blank under the section for
11  the Disciplinary Hearing Officer ("DHO").  (Reply at 2.)  Petitioner argues that this
12  "proves that Petitioner was on supervised release under the supervision of the
13  Probation Department Mr. (Rossitte) and not B.O.P."  (*Id.*)  Petitioner is incorrect.
14  The report was signed on April 28, 2008, by the DHO.[7]  (Surreply, Davidson
15  Decl., Ex. B.)

## III.

## ORDER

18      IT IS HEREBY ORDERED that Judgment be entered denying the Petition
19  and dismissing this action with prejudice.
20  ///

---

[7] In his Reply, Petitioner made a new claim, which was not contained in the Petition, that he could not exhaust administrative remedies because the DHO had not signed the report.  (Reply at 3.)  "A Traverse is not the proper pleading to raise additional grounds for relief."  *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994), *cert. denied*, 514 U.S. 1026 (1995).
    Given Petitioner's contention that he did not receive a copy of the CDC report signed by the DHO, Respondent mailed him a signed copy on December 8, 2008.  (Davidson Decl. ¶ 8.)  Respondent further states that, to the extent Petitioner wishes to exhaust administrative remedies, his appeal options "remain open."  (*Id.*)  Respondent notes that Petitioner is familiar with the appeals process, having appealed two earlier adverse decisions while in BOP custody.  (*Id.* ¶ 5.)  Under these circumstances, Petitioner must exhaust his administrative remedies before challenging the DHO's decision in court.  *See Rivera v. Ashcroft*, 394 F.3d 1129, 1139 (9th Cir. 2004).

1        IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this

2    Order and the Judgment herein on all parties or their counsel.

3

4

5    DATED: December 18, 2008

6                                        ALICIA G. ROSENBERG
                               United States Magistrate Judge